UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

KIMBERLY A. UPSHAW,  Case No.: 12-59271-wsd
    Chapter 7
    Debtor.  Hon. Walter Shapero
_____/

DANIEL M. McDERMOTT,
United States Trustee,

    Plaintiff,

v.  Adv. Pro. No.: 13-05324

KIMBERLY A. UPSHAW,

    Defendant.
_____/

## **OPINION**

### Introduction

The United States Trustee ("UST") filed this adversary proceeding against Debtor to revoke her discharge pursuant to 11 U.S.C. § 727(d)(1). The UST alleges she obtained her discharge by fraud by failing to disclose the existence of an engagement ring she owned on the petition date.

### Governing Law

Section 727(d)(1) provides:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

1

(The UST's complaint also asserted a cause of action under § 727(d)(2), but that allegation was effectively abandoned in the Joint Final Pretrial Order). "To prevail, the Trustee must not only show the requisite fraud but must show that he did not know of such fraud prior to the Debtor's discharge. The Trustee must prove both criteria by a preponderance of the evidence." *In re Ventimiglia*, 198 B.R. 205, 214 (Bankr. E.D. Mich. 1996). Revocation of discharge is an extraordinary remedy that should not be lightly granted. *Id.* at 213. The UST asserts that Debtor's various statements in her original schedules and at her Meeting of Creditors constitute false oaths. "False oath" is referenced in § 727 (a)(4)(A) and has been described to include the following elements: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Keeney*, 227 F.3d 679, 685 (6th Cir. 2000).

Findings of Fact

Debtor had a long term relationship of some fifteen years with her fiancé and the two have a thirteen year old child together. In August 2009, Debtor received as a gift from her fiancé a gold and diamond engagement ring. Shortly thereafter, the ring was appraised, apparently for insurance purposes, for $15,750 and was insured by Debtor. Debtor indicated that she was very proud of the ring, that it had a lot of sentimental value to her, and that she wore it "24/7." Sometime in October 2012, Debtor's fiancé passed away.

Debtor had been in consultation with a bankruptcy attorney as early as June 2012. According to the Rule 2016(b) Statement, Debtor paid the attorney a $250 retainer sometime in July 2012, leaving $644 unpaid. Debtor communicated with her attorney by phone and text

message, and by meeting in public places, but never by meeting at the attorney's office. Debtor admitted that her conversations with the attorney included discussions about Debtor's assets, and specifically jewelry. On August 21, 2012, Debtor signed and filed her Chapter 7 petition, including her bankruptcy schedules. On Schedule B, Debtor listed "Jewelry" valued at $800, which she fully exempted on Schedule C pursuant to 11 U.S.C. § 522(d)(4). Debtor did not make any mention of the engagement ring anywhere in her schedules. On August 21, 2012, Debtor also filed an Application to Pay Filing Fee in Installments, seeking an order that she may pay the $306 filing fee in one lump sum by September 28, 2012 (essentially seeking an extension, rather than installment payments). That application was granted on August 23, 2012. On September 18, 2012, Debtor paid the entire filing fee. On September 27, 2012, Debtor paid her attorney the remainder of the attorney fee. At the September 27, 2012 Meeting of Creditors, Debtor confirmed to the Chapter 7 Trustee that her schedules were true and accurate and that nobody was holding onto any property or assets of hers not listed in the schedules (although she was not specifically asked about any pawn transactions as such). The Chapter 7 Trustee filed a Report of No Distribution on October 3, 2012, Debtor was discharged on November 27, 2012, and the case was closed on November 30, 2012.

Debtor's ring was stolen on or about July 27, 2013 and she filed an insurance claim around August 7, 2013. Debtor did not notify the Chapter 7 Trustee of these facts. The Chapter 7 Trustee did thereafter discover such and was able to recover from Debtor's insurer $8,575.40 (that apparently being the ring's replacement value, which was what the insurer agreed to cover on the loss). The bankruptcy case was reopened on August 29, 2013. On September 30, 2013, the Chapter 7 Trustee withdrew the Report of No Distribution. At her attorney's request, Debtor amended her Schedule B on October 4, 2013 to include "Engagement Ring" valued at $15,000

3

(separate from and in addition to the already scheduled "Jewelry" valued at $800). Debtor also amended her Schedule C to exempt the newly added engagement ring in the amount of $750 under §522(d)(4) and $11,625 under §522(d)(5). The Chapter 7 Trustee objected to these amended exemptions on the basis that Debtor failed to include the ring in her original schedules. Because no opposition to that objection was filed, it was granted. The UST filed the present adversary proceeding on November 12, 2013. Debtor was represented in this adversary proceeding by counsel other than the attorney representing her in her bankruptcy case.

An important factual issue was whether Debtor had pawned the ring prior to the August 21, 2012 petition date or whether she was actually then in possession of it. This question is of importance because Debtor appeared to contend or argue that she forgot to disclose the ring because she had pawned it prepetition and (a) thus it was not then in her physical possession and its omission was innocent; and/or (b) although she had not forgotten about the ring, she believed in good faith that, because of the pawn, she had no legal or possessory interest that needed to be disclosed. These positions, although inconsistent, rely on the ring having been pawned prepetition. If that was not the case, these positions would not be relevant or persuasive, particularly in light of the fact that Schedule B requires disclosure of property being held for Debtor by someone else and Schedule D and portions of the Statement of Financial Affairs likely require disclosure of the existence of a pawn transaction.

Jason Silver is the owner and president of Silver's Jewelry and Loan, the pawn shop at which Debtor in fact had pawned the ring. He testified that his business records indicate the following: (a) Debtor first pawned the ring on October 1, 2012 for $500; (b) on December 31, 2012, at or around the time the three-month pawn period was expiring, Debtor "renewed" the pawn by paying $48 of interest and storage fees, and thus avoided surrendering the ring to the

pawn shop; and (c) on February 9, 2013, Debtor finally redeemed and obtained possession of the ring by repaying the $500 principal, plus $32 of additional interest and storage fees. There was also testimony regarding a bracelet (also undisclosed in Debtor's schedules) that remains in pawn and that is not of particular relevance. Mr. Silver testified that, according to the records kept in the ordinary course of his business (which were admitted into evidence), the ring was not in pawn on the August 21, 2012 petition date or any prior date. Having observed Mr. Silver's live testimony, the Court finds him to be a credible witness with no incentive (financial or otherwise) to be untruthful. The Court further finds no reason to question the veracity of the indicated business records. The Court thus concludes that as of the petition date, the ring was not pawned and it was in Debtor's physical possession.

Debtor disputed Mr. Silver's testimony and made various inconsistent statements regarding when she pawned the ring. At Debtor's May 21, 2014 deposition in connection with this adversary proceeding, she testified that she first pawned the ring in early August 2012 (prepetition) in order to obtain the money to pay the bankruptcy filing fee and her attorney's retainer fee. However, as noted, the Rule 2016(b) Statement indicates that Debtor had already paid the attorney's retainer sometime in July 2012. Further, Debtor immediately sought and obtained an extension for the payment of the filing fee and did not actually pay the filing fee until September 18, 2012. This timeline discredits Debtor's indicated testimony at her deposition.

Debtor offered a different story at trial, testifying that she pawned the ring on June 29, 2012 (prepetition). The apparent source of this date is a notation on Mr. Silver's business records under a column labeled "Paid Thru". Ex. 5 at 3. However, Mr. Silver credibly testified that this column represents a module on his pawn shop's computerized records that is simply not set up

5

and not used in the course of business. In other words, that date means nothing. The Court accepts this explanation and, in light of Mr. Silver's testimony and evidence, Debtor's trial testimony is simply not credible.

Analysis

As to the first of the *In re Keeney* elements discussed above, Debtor's bankruptcy schedules and her testimony at the Meeting of Creditors were statements under oath. Second, because the Court has previously concluded that she was in physical possession of the ring on the petition date, the Court finds that Debtor's statements were false. Debtor wholly omitted the ring from her bankruptcy schedules and then falsely affirmed at her Meeting of Creditors that her schedules were true and accurate. Third, the Court concludes that Debtor made such false statements knowingly. The engagement ring was not the type of asset that could be easily forgotten, particularly because (a) on the petition date, Debtor had owned the ring for three years; (b) the ring was in Debtor's physical possession on the petition date; (c) it had substantial monetary and sentimental value; (d) she insured it shortly after receiving it; and (e) she admitted that she wore it "24/7." Fourth, given the foregoing, the Court finds the false statements excluding the ring from the bankruptcy process were made with fraudulent intent to conceal its existence. The Court concludes that Debtor failed to disclose the ring even to her bankruptcy attorney. This is both unfortunate and ironic because, had Debtor fully disclosed and discussed the ring with her attorney, there likely would have been a different result because of its value and the amount of exemptions Debtor still had available. This is the kind of situation that demonstrates (a) the crucial importance of a debtor making full disclosure of assets and an attorney making a full exploration and explanation of available exemptions; and (b) the consequences of such not being

6

thoroughly and completely performed. Although the UST's case relies to some extent on circumstantial evidence, such does not foreclose on its proving Debtor's subjective intent to defraud. *See In re Rembert*, 141 F.3d 277, 282 (6th Cir. 1998) (subjective analysis of a debtor's fraudulent intent is extremely difficult to establish because debtors have incentive to make self-serving statements and will rarely admit to fraud). At the very least, Debtor's conduct at the time she made the indicated omissions can be deemed fraud by way of reckless disregard for the truth. As discussed in *In re Rule*, 2011 WL 841505 (Bankr. E.D. Ky. Mar. 7, 2011) citing (*Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992):

> The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied.

Fifth, the Court concludes that Debtor's false statements related materially to her bankruptcy case, as they concealed the existence of an asset of the bankruptcy estate, which was one of substantial value (and notwithstanding its potential exemptibility, in whole or in part). "Accordingly, the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). Lastly, the Court finds that neither the UST or the Chapter 7 Trustee knew of Debtor's fraud prior to the entry of Debtor's discharge.

Conclusion

The Court thus concludes that the UST has met its burden of proof with regard to its § 727(d)(1) allegation and that Debtor's discharge should be revoked. The UST shall present an appropriate order.

**Signed on November 06, 2014**

										  /s/ Walter Shapero
										**Walter Shapero**
										**United States Bankruptcy Judge**